UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

GREGORY RYAN WEBB                                                               PLAINTIFF

v.                                                CIVIL ACTION NO. 4:18-CV-P27-JHM

B.J. BURKHART *et al.*                                              DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on initial review of Plaintiff Gregory Ryan Webb's *pro se* amended complaint (DN 40) pursuant to 28 U.S.C. § 1915A. For the reasons that follow, some of the claims will proceed, some of the claims will be dismissed, and others will be severed from this action.

**I.**

Plaintiff is a convicted prisoner who brings this action pursuant to 42 U.S.C. § 1983 asserting claims occurring at three different institutions—Muhlenberg County Detention Center (MCDC), Daviess County Detention Center (DCDC), and Harlan County Detention Center (HCDC). As Defendants, Plaintiff names Muhlenberg County and MCDC Jailer Mark Curry and Class D Coordinator Kay Todd; and Daviess County and DCDC Jailer Arthur Maglinger and Class D Coordinator Regan Bennett. The remaining Defendants are related to his detention at the HCDC: Harlan County; HCDC Jailer B.J. Burkhart, Captain Dan Howard, Chief Deputy Jailer/Class D Coordinator Derrick Moore, Deputy Jailer Whitman, Deputy Jailer Justin Howard, and Deputy Jailer Blake; and Southern Health Partners (SHP), medical contractor at HCDC, and SHP employees, Nurse Tammy "Halcomb(s)" and Nurse Jeff Osborne. All Defendants are sued in their individual and official capacities, with the exception of Defendants Todd, Bennett, Justin Howard, Blake, and Jeff Osborne, who are sued in their individual capacities only.

As to the claims arising at MCDC, Plaintiff complains that with respect to another action he filed, 5:18-CV-P81-TBR, MCDC "kept taking out 50% instead of the 20%" from his jail trust account for monthly payment of the filing fee, when the Court's fee order required only 20% collection. He alleges, "I believe MCDC could have easily manually collected the 20% but they are not a legal friendly facility and I believe I was considered a problem after excering my right to the Courts." Plaintiff reports that he mailed a "letter/complaint" to the Clerk of Court concerning the overcollection of the filing fee by MCDC and that on October 18, 2017, the Clerk mailed a "letter/memo that I received on 10/23/17 concerning the overcollection or to only collect 20% when MCDC also received a copy." He claims that on October 31, 2017, "I was told to quickly pack my property for transfer." He reports that he did not collect his work boots or work hat and brought it to the attention of two transport workers. Plaintiff claims,

> Upon arrival at Daviess CDC [on October 31, 2017], the Deputy took my $165 worth of commissary that the Muhlenberg Jailer, Mark Curry, knew would happen and he could have prevented it from happening given the situation. With the lowest level of security, I was also placed in a violent disciplinary cell C-104 when Mark Curry could have prevented this too. Mark Curry is known for transferring problem Inmates to Daviess CDC. During the ride the other Inmate stated to me, "I'm being transferred for writing a grievance, and Mark Curry told me on Sunday I'd be going somewhere I didn't like." I was later told that MCDC's accounting system wouldn't allow a 20% collection but I believe there's an over-ride or manual collection option. I was a good worker on their community work program, I was over half-way through my MRT program after being charged $25 for the book, and I was transferred further away from my home[.] I strongly believe I was transferred after my Complaint to the Clerk as a reprisal/retaliation.

Plaintiff reports that "[u]pon my arrival [at DCDC] the Deputy Jailer's became aware of the transfer reason over the 20% collection." Plaintiff reports repeatedly requesting upon his arrival at that jail for intake personnel not throw away his commissary, "approximately $165.00 worth." He advises that he was told it would be donated and/or disposed and that he was not

2

given the opportunity to mail it out, have it picked up, or stored in his jail property. Plaintiff states that on November 8, 2017, "trustee Inmates at DCDC were in hallway offering to trade/sell Kroger peanut butter," which he believes was part of the commissary that he brought with him. Plaintiff alleges violations of due process and of the Takings Clause of the Fifth Amendment by Defendant Daviess County Jailer Maglinger and a violation of equal protection because "DCDC [] allows Inmates they're familiar with to bring commissary in the Jail that was purchased at another jail."

Plaintiff further alleges that at DCDC:

> I was placed in C-104 with pre-trial Inmates charged with violent crimes including murder, Inmates who were being released from isolation for disciplinary reasons, or other Inmates who had recent disciplinary issues: On the early morning of 11/13/17 I was forced to fight or get jumped by Inmates. . . . For the late night of 11/12/17 and morning of 11/13/17, there was no help from Jail staff. Either fight or get dragged off your bed/mattress and jumped.
>
> . . . .
>
> . . . After I was sure no Deputy would come and that I couldn't talk my way out of the situation, I physically stood up for myself. . . . My altercation ended after I faced one Inmate and another Inmate grabbed by feet from behind. I was slammed to the concrete and my head bounced off a metal table seat.
>
> The incident caused me a gash on my head, a chipped tooth, and broke my hand that's now deformed. . . . From that day on until I received antibiotics at Marion CDC, I felt dazed with an infection in my tooth and/or head.

Plaintiff reports that while he was in the shower to wash the blood off, "the 'gang' burglarized and stole approximately $175.00 of my property . . . ." Plaintiff claims that he was denied appropriate medical treatment and denied his right to be protected.

Plaintiff alleges that he requested Defendant DCDC Jailer Maglinger "to submit me for the EGTC (good time), . . . but I've received no response. I also lost 4-5 days good time for not being allowed on DCDC's work side."

3

Plaintiff reports that he was transferred to HCDC on December 1, 2017. He states, "I believe my transfer . . . was the result of evil motive and intent [by Defendants DCDC Jailer Maglinger and Class D Coordinator Bennett] to prevent me from receiving 90 days program completion credit and to prevent medical accountability." He claims that in mid-November 2017, he sent an electronic request to Defendant Bennett requesting not to be transferred due to only having five weeks left to complete the "MRT [program] and receive 90 days against my sentence." He states that on November 28th or 29th, Lt. Moore told him that he will be transferring "'very soon,' . . . 'D.O.C. did a surprise visit due to a grievance you mailed to D.O.C.'" Plaintiff indicates, "I believe I wasn't allowed to stay and finish MRT due to reprisal from my grievances to D.O.C. and/or grievances to the U.S. Clerks Office, plus D.O.C. showing up at DCDC."

According to the amended complaint, on December 2, 2017, his second day after his transfer to HCDC, Plaintiff started the "HCDC Inmate work program." He alleges that he and other inmates were required to use weed eaters without the manufacturer safety guards, which were "purposely removed by HCDC," and that "every day I weedeated, it caused little whelps and/or sores on my face and/or neck." He reports that he complained to his immediate supervisor. Apparently, he was placed in isolation sometime thereafter, because he alleges that after writing grievances to "D.O.C.," a "D.O.C. representative" visited him in isolation on January 26, 2018. Plaintiff states, "I believe I was kept in cell P-3 for longer due to my verbal grievance to the D.O.C. rep who did nothing."

Additionally, Plaintiff alleges that HCDC "is a 'disciplinary facility' and not 'legal friendly.'" He alleges that they do not provide a law library; that his requests for legal copies,

4

law library, notary service, and for retrieval of legal documents from his jail property for a state court case were ignored; that "HCDC treated me differently due to my being labeled a jailhouse lawyer"; and that "I earned the right to be submitted for the EGTC that I requested [Defendant] Burkhart, to submit me for but I've received no response."

Plaintiff also alleges that he was placed in medical isolation for 22 days in January and February 2018 on "medical watch" because he allegedly said he was "unstable," but he believes that HCDC officials used this as an excuse to lock him down for grievances he had written. He contends that in isolation he had "no phone call, and a total of 50 minutes exercise outside the cell. There was no hot water in showers." Plaintiff further complains that HCDC refused to transfer him "out of both spite and so they could profit from me as a State Inmate" and that HCDC officials "singled [him] out as an Inmate to do the 'dirty work' for them." He complains that Defendant Deputy Justin Howard stole some of his property while in D block. Plaintiff alleges that he was not treated for "an infection in my head that's possibly from my chipped/broken tooth" and was denied antibiotics and to be seen by a dentist. He states that he was told that he can have his family make arrangements with the local dentist and that the jail would take him once the appointment was made.

Plaintiff reports being transferred to Pike County Detention Center on April 20, 2018, where he was given an antibiotic prescription and that before that prescription ran out he was transferred to Marion County Detention Center, where he is currently housed. He claims that at Marion County Detention Center, he saw a dentist, who prescribed a stronger cycle of antibiotics and pulled his tooth in August 14, 2018.

Finally, Plaintiff alleges that the Jailers of the detention centers in Muhlenberg, Daviess, and Harlan Counties violated his rights to access the courts, to equal protection, and to "express complaints without reprisal/retaliation" by failing in December 2017 and January 2018 to provide "account statements for six months to attatch to my prisoner application to proceed without pre-payment of fees." He reports that later in April 2018, "Harlan CDC produced printouts."

As relief, Plaintiff seeks compensatory and punitive damages. He also seeks the following injunctive relief: "to no longer allow Daviess CDC to dispose of, donate, or give away State Inmates commissary upon arrival to the Daviess CDC without some appropriate procedure"; "to no longer allow Muhlenberg CDC to transfer any State Inmate who has a collection or garnishment due to a Court Order and in the event of a 20% garnishment/collection that MCDC's accounting system can't compensate, MCDC will manually collect"; "to no longer allow Harlan CDC to force Inmates who are in danger to be forced to stay in the same housing or work area where the danger is present"; and an injunction directing Defendant DCDC Jailer Maglinger and Defendant HCDC Jailer Burkhart "to forward a memo regarding exceptional service of [Plaintiff] pursuant to KRS 197.045(1)(b)."

**II.**

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from

such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

## III.

*Injunctive relief*

Plaintiff is now incarcerated in Marion County Detention Center. A case, or portion thereof, becomes moot when events occur which resolve the controversy underlying it. *Burke v.*

7

*Barnes*, 479 U.S. 361, 363 (1987). Generally, an inmate's release from prison or transfer to another prison moots his request for injunctive relief. *Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998) (holding that a prisoner's § 1983 claims for injunctive relief became moot after he was transferred to another facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (finding in a § 1983 case, that "to the extent Kensu seeks declaratory and injunctive relief his claims are now moot as he is no longer confined to the institution that searched his mail"). Because Plaintiff is no longer incarcerated in MCDC, DCDC, or HCDC, his requests for injunctive relief regarding disposal of commissary at DCDC, transfer/garnishment/collection issues at MCDC, and dangerous conditions at HCDC will be dismissed.

As to the remaining request for injunctive relief, Plaintiff asks that Defendant Jailers Maglinger and Burkhart be directed "to forward a memo regarding exceptional service" of Plaintiff. Subsequent to filing the amended complaint, Plaintiff filed a letter (DN 42) indicating that he may be subject to immediate release if the jailers submitted him for "extraordinary and/or exceptional service good time." "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Because Plaintiff is seeking a speedier or immediate release from detention, the § 1983 claim for such relief cannot lie and will be dismissed.

*Property/commissary loss*

Plaintiff alleges that because of the transfer from MCDC to DCDC, he lost personal property (such as, work boots and work hat and MRT book) and commissary and that at DCDC a gang stole approximately $175.00 of his property.

As to Plaintiff's alleged due process and takings violations, the Supreme Court has held that where adequate remedies are provided by state law, the negligent or intentional loss or destruction of personal property does not state a claim cognizable under the Fourteenth Amendment's Due Process Clause. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 537 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). In order to assert a claim for deprivation of property without due process pursuant to 42 U.S.C. § 1983, a plaintiff must allege that the state post-deprivation procedures are inadequate to remedy the deprivation. *Parratt v. Taylor*, 451 U.S. at 543-44. Similarly, the Sixth Circuit has stated, "in section 1983 damage suits claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate." *Victory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983). The Sixth Circuit has found that Kentucky's statutory remedy for such losses is adequate within the meaning of *Parratt*. *Wagner v. Higgins*, 754 F.2d 186, 191-92 (6th Cir. 1985). The same rationale applies to claims under the Fifth Amendment Takings Clause; that is, no taking has occurred absent a showing that available remedies have been pursued and have failed to provide adequate compensation. *Hudson v. Palmer*, 468 U.S. at 539 (O'Connor, J., concurring).

As explained by Justice O'Connor,

> [A] mere allegation of property deprivation does not by itself state a constitutional claim under either [the Due Process or Takings] Clause. The Constitution requires the Government, if it deprives people of their property, to provide due process of law and to make just compensation for any takings. The due process requirement means that Government must provide to the inmate the remedies it promised would be available. Concomitantly, the just compensation requirement means that the remedies made available must adequately compensate for any takings that have occurred. Thus, in challenging a property deprivation, the claimant must either avail himself of

> the remedies guaranteed by state law or prove that the available remedies are inadequate. When adequate remedies are provided and followed, no uncompensated taking or deprivation of property without due process can result.

*Id.* (citations omitted). Plaintiff has failed to demonstrate an inadequacy of state remedies in the case at bar and fails to state a claim upon which relief may be granted under the Fifth Amendment Takings Clause and Fourteenth Amendment Due Process Clause.

Plaintiff also alleges a violation of equal protection under the Fourteenth Amendment because "DCDC [] allows Inmates they're familiar with to bring commissary in the Jail that was purchased at another jail." This is a nonspecific allegation devoid of facts sufficient to state an equal protection claim. *See, e.g.*, *Perovich v. Vill. of Valley View, Ohio*, 431 F. App'x 455, 458 (6th Cir. 2011) (holding that dismissal of an equal protection claim was appropriate under Fed. R. Civ. P. 12(b)(6) where the plaintiff's complaint "does not point to any individual who was treated differently"); *Adams v. Thompson*, No. 3:07-3884, 2008 WL 8099780 (D.S.C. Dec. 19, 2008) (noting that a plaintiff could not allege an equal protection violation simply by "claim[ing] that other inmates who committed greater disciplinary offenses improved their custody status sooner than he did" where plaintiff "has not provided the names of inmates that he believes were treated more favorably or provided sufficient information to show that they were similarly-situated to him").

Plaintiff, therefore, fails to state a claim upon which relief may be granted regarding the taking/disposal/loss of his property.

*Community work program*

Plaintiff alleges that when he was transferred to DCDC, he had to give up his community work program. Prisoners, however, have no constitutionally protected interest in prison employment/rehabilitation programs based on the Fourteenth Amendment. *See, e.g.*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) ("A prisoner has no constitutional right to prison employment or a particular prison job."); *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999) (no liberty or property interest in a rehabilitative program); *Sykes v. Carl Perkins Rehab. Ctr.*, No. 96-5837, 1997 WL 572893, at *1 (6th Cir. Sept. 1, 1997) (no liberty or property interest in federally funded prisoner rehabilitation program). This claim must be dismissed.

*Retaliation by MCDC and DCDC Defendants*

Plaintiff claims that Defendant MCDC Jailer Curry transferred him to DCDC (an allegedly less favorable institution, further away from his family, causing him to cease community work program) in retaliation for complaining to the Court about overcollection of the filing fee. Plaintiff additionally alleges that Defendants DCDC Jailer Maglinger and Class D Coordinator Bennett transferred him so he could not finish MRT and to prevent his receipt of "90 days program completion credit" based on grievances to the D.O.C. **The Court will allow these retaliation claims to proceed against Defendants Curry, Maglinger, and Bennett in their individual capacities.**

*Failure to protect*

Plaintiff alleges that he was denied his right to be protected from assault by other inmates while at DCDC. **The Court will allow this Eighth Amendment claim to continue against Daviess County and Jailer Maglinger in his individual and official capacities.**[1]

*Failure to provide trust account statements*

Plaintiff alleges that the Jailers at MDCD, DCDC, and HCDC violated his rights to access the courts, to equal protection, and to "express complaints without reprisal/retaliation" by failing in December 2017 and January 2018 to provide "account statements for six months to attatch to my prisoner application to proceed without pre-payment of fees." He reports that later in April 2018, "Harlan CDC produced printouts."

Plaintiff fails to show that he was denied access to the courts because the instant action was not dismissed or otherwise negatively affected by the institutions' failure/delay in providing the trust account statements. *Lewis v. Casey*, 518 U.S. 343, 351-53 (1996) (indicating that a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim). Plaintiff also fails to allege facts showing any equal protection or "reprisal/retaliation" claim. His claims surrounding the institutions' failure to provide trust account statements will be dismissed.

---

[1] Plaintiff broadly alleges that he was "denied appropriate medical treatment" after the November 12-13, 2017, incident, but he does not provide any specific information related to this claim. He, therefore, fails to state a claim upon which relief may be granted with regard to these allegations.

*Collection of the filing fee*

Plaintiff complains about MCDC's monthly collection of 50% from his jail trust account statement for payment of the filing fee rather than 20% as ordered by the Court in Civil Action No. 5:18-CV-P81-TBR. Plaintiff, however, fails to demonstrate how this monthly overcollection rises to the level of a constitutional violation. He does not allege that more than the $350.00 filing fee was collected, and to the extent he may be alleging a property loss, he fails to show inadequacy of state court remedies. *See Parratt v. Taylor*, 451 U.S. at 543-44. At most, Plaintiff has alleged that MCDC was in contempt of a Court order in another case, but that appears to have been for a very short time period. And Plaintiff was transferred away from MCDC on October 31, 2017, ending the monthly overcollection. For these reasons, the claim regarding overcollection of the filing fee will be dismissed for failure to state a claim upon which relief may be granted.

*Remaining claims regarding incarceration at HCDC*

All of the remaining claims pertain to Plaintiff's incarceration at HCDC. He complains of having to use unsafe weed eaters, being placed in isolation and medical isolation in retaliation for complaining/filing grievances, being denied a law library and other legal services, loss of property, and denial of medical/dental treatment. He sues Harlan County, HCDC officers/ employees, and SHP and its employees at HCDC.

Federal Rule of Civil Procedure 20 states in relevant part,

Persons . . . may be joined in one action as defendants if:

(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).

After reviewing Plaintiff's amended complaint, the Court concludes that Plaintiff's remaining claims regarding his HCDC detention against Defendant Harlan County; HCDC Defendants Burkhart, Dan Howard, Moore, Whitman, Justin Howard, and Blake; and Defendants SHP and its employees, Defendants Nurse Tammy "Halcomb(s)" and Nurse Jeff Osborne do not arise out of the same transaction or occurrence as his surviving claims against MCDC Defendants Curry and Bennett, DCDC Defendant Maglinger, and Defendant Daviess County. To establish retaliation, deliberate indifference to safety and a serious medical/dental need, loss of property, and denial of access to courts while at HCDC, Plaintiff will have to establish vastly different facts than needed to prevail on his remaining First and Eighth Amendment claims against MCDC/DCDC/Daviess County Defendants.

Having concluded that the Harlan County/HCDC/SHP Defendants have been improperly joined, the Court must decide on an appropriate remedy. Federal Rule of Civil Procedure 21 provides, "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. "[T]he manner in which a trial court handles misjoinder lies within that court's sound discretion." *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988). "Rule 21 gives the court discretion to make three types of orders. The court may add parties, drop (dismiss) parties, and may sever '[a]ny claim against a party.'" 4-21 *Moore's Federal Practice-Civil* § 21.02 (internal quotation omitted). "Severance under Rule 21 results in separate actions." *Id.* at § 21.06. "As with any case in federal court,

[the severed action] may be transferred under appropriate circumstances . . . . Indeed, the fact that a claim might be subject to transfer to a more appropriate venue is a valid reason to order severance." *Id.*

After carefully considering the issues and weighing its options under Rule 21, the Court concludes that the most economical and just manner in which to proceed is to sever Plaintiff's remaining claims against the Harlan County/HCDC/SHP Defendants and then transfer them to the Eastern District of Kentucky, the judicial district in which Harlan County is located, *see* 28 U.S.C. § 97(a), and where venue over the claims is most appropriate. *See* 28 U.S.C. § 1404(a).

## IV. <u>ORDER</u>

For the foregoing reasons, **IT IS ORDERED as follows**:

(1) The following claims shall proceed on initial review of the amended complaint: **retaliation claims against Defendants Curry, Maglinger, and Bennett in their individual capacities and the Eighth Amendment failure-to-protect claims against Daviess County and Maglinger in his individual and official capacities**. The Court will enter a separate Service and Scheduling Order to govern these continuing claims.

(2) The remaining claims arising out of Plaintiff's detention at MCDC and DCDC as well as the claim that MCDC, DCDC, and HCDC violated his rights in failing/delaying filing of Plaintiff's jail trust account statement are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted. **The Clerk of Court shall terminate the following Defendants from this action: Muhlenberg County and Kay Todd**.

(3) Plaintiff's remaining claims in the amended complaint (DN 40) against Defendant Harlan County; HCDC Defendants Burkhart, Dan Howard, Moore, Whitman, Justin Howard, and Blake; and Defendants SHP and its employees, Defendants Nurse Tammy "Halcomb(s)" and

Nurse Jeff Osborne are **SEVERED from this action**. Pursuant to Rule 21, the **Clerk of Court is DIRECTED to open a new civil action** with the amended complaint (DN 40) as the complaint. The instant Memorandum Opinion and Order shall be docketed in the new action. The **Clerk of the Court is FURTHER DIRECTED to TRANSFER the newly opened action to the United States District Court for the Eastern District of Kentucky, Southern Division at London**.

Date: March 6, 2019

Joseph H. McKinley Jr., District Judge
United States District Court

cc: Plaintiff, *pro se*
　　Defendants
　　Muhlenberg, Daviess, and Harlan County Attorneys
4414.005